Tracy Marie EARLS a/k/a Tracy
McFadden, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-89-01051-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 17, 1991.

Jane Wynegar, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist.
Atty., Roger Haseman, Asst. Harris Coun-
ty Dist. Atty., for appellee.

Before COHEN, WILSON and PRICE,[1]
JJ.

OPINION

COHEN, Justice.

A jury convicted appellant of assaulting
Deputy Sheriff Mack, a jailer, while she
was an inmate at the county jail, and as-
sessed punishment at 180 days in jail.

Appellant's fourth point of error asserts
the trial court erred in refusing to disclose
exculpatory evidence, specifically, the writ-
ten statements of seven potential witness-
es. The trial court examined the state-
ments, found they were not exculpatory,
refused to disclose them, and sealed them
for appellate review.

1. The Honorable Frank C. Price, former Justice,
Court of Appeals, First District of Texas at
Houston, sitting by assignment.

We allowed defense counsel to inspect the sealed statements and requested both parties to file supplemental briefs on this point of error.

Appellant filed a pretrial motion requesting the State to disclose all exculpatory evidence in its possession. At a pretrial hearing, the prosecutor tendered to appellant a two-page list containing the names, addresses, and phone numbers of 52 persons the State had interviewed. The list did not state which, if any, persons had evidence favorable to appellant. The prosecutor gave appellant exculpatory statements of seven persons.[2] The prosecutor gave approximately 20 other statements to the trial court for an in camera inspection, contending that none were exculpatory. The trial court ruled that seven of these were not exculpatory, and ordered them sealed.[3] The trial court gave appellant the remaining statements.

■ Upon proper request, the State must disclose to a defendant exculpatory evidence that is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Ex parte Adams*, 768 S.W.2d 281, 288–90 (Tex.Crim.App.1989). Exculpatory evidence is material if there is a reasonable probability that its disclosure would have led to a different result. *Id.* at 289–91. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In this case, appellant made a proper request. The State and the trial court not only did not disclose the seven statements; both affirmatively stated that the statements were not exculpatory.

Appellant argues that the seven sealed statements contain material exculpatory information that contradicted the State's main witness, Mack, and that she could have called the declarants to testify, to uncover other leads and defensive theories, or to discredit the police investigation.

■ The State vigorously contends that, even if the undisclosed statements are exculpatory and material, appellant should have discovered them herself. The State contends that appellant could have discovered this evidence by interviewing the seven witnesses, whose names, addresses, and telephone numbers were on the list of 52 witnesses the State had interviewed. We reject this contention.

The State declared in open court that the seven statements were not exculpatory, and the judge agreed. The rule in *Brady v. Maryland* requires the State to disclose exculpatory information. It does not require the defendant to expose the State's claims and the trial court's erroneous conclusion that the statements are not exculpatory. It is particularly inappropriate to impose that duty on appellant because she was the only one among the parties and the trial court who did not get to see the statements. Such a rule would reward prosecutors for not disclosing evidence inconsistent with guilt. That would pervert the rule in *Brady*, which requires that exculpatory evidence be disclosed, not withheld. Violation of this fundamental constitutional principle has recently led to disastrous results in this State. *See Ex parte Adams*, 768 S.W.2d 281; see also *Ex parte Brandley*, 781 S.W.2d 886 (Tex.Crim.App.1989).

We must first decide whether the trial judge erred in ruling the statements were not exculpatory. If they were exculpatory, we must decide whether the statements were material or merely cumulative.

■ Mack testified that on May 7, 1989, appellant scratched him with her fingernails as he took her to her cell. Appellant testified she never attacked Mack, but that Mack and others threw her into a cell and beat her with no justification. The evidence showed that appellant was convicted in April 1989 of aggravated assault, arising from her assault on a peace officer in the

---

2. The prosecutor gave appellant three signed statements of Linda Ann Page; an unsigned statement of Debra Anderson; signed statements of Beverly Ann Calvin, Laura Ann Davenport, Sandra Yvette Oreaboe, Silva Gonzales, Patrice Junnell Joseph, Louesa Luckey.

3. These were the statements of Leslie G. Hughes, Donna Dean, Donna Carol Wages, Beth Ann Bailey Madeley, Dena S. Mitchell, Linda Marie Davis, and Linda Kay Johnson.

Harris County Jail in March 1989, about two months before this assault on May 7, 1989.

The statements by Mitchell, Hughes, Dean, and Wages are exculpatory and material. Taken together, they show that on May 3, 1989, four days before the assault, appellant begged not to be put on the fourth floor at the jail because she feared the officers there would assault her; that just before the fight between appellant and Deputy Mack broke out, an officer told inmates that male officers were coming and would not hesitate to do violence; that immediately after the fight between appellant and Mack, several officers told assembled inmates that they had just beaten one inmate and asked who wanted to be next. No statements disclosed to appellant contained this information.

Dena S. Mitchell swore:

On Wednesday, May 3, 1989, I was taken to classification with Tracey Earls. I was being placed into segregation and Ms. Earls was being moved out of segregation. When Ms. Earls got her arm band from the inmates in classification, and realized she was being placed on the fourth floor, she begged the officer to put her on another floor. Ms. Earls told the officer that if she was placed back on the fourth floor that she "just knew" that the officers "were going to jump on her." The officer ... left us in the female shower area and was gone a short time. When she returned she told Tracey that she (Tracey) had no choice in the matter, and that she (Tracey) had to go where they (the police) put her.

Appellant claimed at trial she was attacked by officers without provocation. Evidence suggested a motive that might support that claim, namely, that appellant had committed a felony assault on a peace officer in the Harris County Jail just weeks before, in March 1989. Mitchell's statement shows that appellant feared retribution and asked appropriate authorities to protect her from it. Such testimony from Mitchell would have tended to dispel the natural suspicion any juror would have for appellant's testimony. This is important because appellant's credibility was the primary issue the jury had to decide.

Leslie G. Hughes swore:

On May 7, 1989, I was in cell block 4–D–1.... Sgt. Holly was telling us that she was fixing to have some male officers work our floor and that we would see how easy we had it before because the male deputies wouldn't hesitate to kick our ass. [A short time later] I heard Tracey Earls in the lobby screaming Mama, I want to see a doctor and there was blood on the lobby then a male told her to shut up before he cracked the wall with her face. After awhile [Officers Genovese, Ferguson, Collurro, and McConnell] came back into the multi-purpose room, and [Collurro] came in and said "we just fucked one up who wants to be next", [Holly] said "you all thought one of my deputies being beat up was funny". Tracey Earls thought it was funny too, but if and when you can ask her I bet she ain't laughing now. Then [Genevese] got in front of us and told us that one inmate had already been hurt so listen and do exactly as he says or we also would be hurt. After his speech he left the room.

Hughes' statement is material because it tends to show that Sgt. Holly expected and predicted violence from the male officers, that the officers gave a speech using appellant as an example in order to inspire obedience, and that there was a reference to a deputy being beat up, possibly a reference to appellant's assault on a peace officer in the jail several weeks before.

Donna Dean swore:

I heard Tracey Earls yell, "Mama! Mama! Lord help me please! What did I do?! What did I do?!" and minutes after that McConnell, ... and Collurro ... came in the multi-purpose room and said, Have no illusions the same thing that happen to her can happen to ya'll. McConnal ... said, Now which one of ya'll wants to be next. Either number 7, number 8 or number 9 stood at the door and when the door opened we saw an inmate mopping up a pool of blood.

Donna Carol Wages swore:

Deputy number 11 came in the multi-purpose room screaming, "We just fucked one up, does anybody else want any?" She was walking up and down the aisles in the multi-purpose room with her eyes wild and her fist clenched, like she was wanting to jump on somebody. Then Deputy number 6 came in the multi-purpose room and said, "This has gotten out of hand so when you go out to the T–Hall to be searched, don't raise your hands or I will take this as a theatening gesture."

The statements by Dean and Wages are material. They confirm and support the statements by Hughes and Mitchell. These four statements, taken together, show events occurring three days before, minutes before, and minutes after this incident, events which a reasonable jury may well have taken as evidence in support of appellant's claim that she was the victim, not the perpetrator, of an assault. Whether judged under the common-law standard in *Ex parte Adams* or under the statutory standard in TEX.R.APP.P. 81(b)(2), we cannot find that the error in failing to disclose the statements was harmless.

We have examined the statements of Madeley, Davis, and Johnson and conclude they were exculpatory, but cumulative of other statements that were disclosed.

Point of error four is sustained.

The discussion of the remaining points of error does not meet the criteria for publication, TEX.R.APP.P. 90, and is thus ordered not published. The judgment is reversed, and the cause is remanded.